IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NICODEMO DiPIETRO, :
:
    Plaintiff :
:
vs. : CIVIL NO. 1:CV-15-1137
:
THE DEPARTMENT OF : (Judge Caldwell)
CORRECTIONS & ITS EMPLOYEES :
LISTED HEREIN, *et al.*, :
:
    Defendants :

*M E M O R A N D U M*

I. *Introduction*

    The pro se plaintiff, Nicodemo DiPietro, an inmate at the state correctional institution in Somerset, Pennsylvania, has filed several motions: three motions to supplement the complaint (Docs. 42, 46 and 54) and a proposed supplemental complaint; a motion for a temporary restraining order (Doc. 40); two motions for appointment of counsel (Docs. 31 and 45); a motion for extension of time/stay of proceedings (Doc. 47); and a motion to appoint a mediator (Doc. 48). Also pending is Defendants' motion to dismiss or in the alternative motion for summary judgment (Doc. 34) and a motion to withdraw that motion. (Doc. 55).

    For the reasons that follow DiPietro's motions will be denied, Defendants' motion to withdraw their potentially dispositive motion will be granted, the motion deemed withdrawn, and Defendants will be directed to file an Answer to the Amended Complaint.

II.   *Discussion*

   A.   *Motions to Supplement the Complaint*

DiPietro alleges the following in his motions to supplement.  He claims that on June 3, 2016, he was advised by Unit Manager Little of the state correctional institution in Houtzdale, Pennsylvania, that he would be transferred to (SCI-Somerset) "because of [his] lawsuit against Daniel Mienert." (Doc. 42-1, Suppl.)  He also claims Unit Manager Little "breached security" by telling him he would be transferred, and to which facility, in advance.

DiPietro also claims three unknown guards at SCI-Houtzdale assaulted him, broke his reading glasses, and knocked out one of his teeth.  He was taken to the Restrictive Housing Unit (RHU) after this altercation.  There he was held down, gagged and water-boarded with a salty liquid.  These actions were repeated until he heard a voice say "what are you doing, he is white." (*Id.*)  The abuse then stopped.

His injuries were photographed on June 7, 2016, upon his arrival at SCI-Somerset where he also received emergency dental care.  He was again placed in the RHU where he is receiving psychiatric treatment and psychotherapy for PTSD due to the "drowning" incident.

DiPietro filed an abuse allegation with SCI-Somerset's Security Office and a grievance.  DiPietro also noted upon his arrival at SCI-Somerset that his reading glasses and legal property pertaining to this case were missing "no doubtly (sic) thrown out by Houtzdale unknown staff."  Without his glasses DiPietro can not read or write clearly.

-2-

As relief, DiPietro seeks a permanent injunction prohibiting the Pennsylvania Department of Corrections (DOC) from keeping him in the RHU longer than his RHU sentence or transferring him in retaliation for his lawsuit. He seeks a transfer to a facility in the eastern region of the state, closer to his family. (Doc. 41-2 and Doc. 40). All of his motions to supplement revolve around these new issues. *See* Docs. 42, 46, and 54.

In reviewing DiPietro's submissions, it is clear he seeks to supplement his complaint by adding new claims against new yet-to-be identified SCI-Houtzdale staff members for events that transpired after the filing of this action in June 2015. As such, his motion will be construed as a motion to supplement his complaint pursuant to Fed. R. Civ. P. 15(d).

> Rule 15(d) provides:
>
> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Fed. R. Civ. P. 15(d).

DiPietro's initial Complaint named twenty-seven defendants from various correctional facilities and the DOC's Central Office, and complained in general, of the Defendants' failure to protect him from retaliation by Daniel Mienert after he refused to be an informant. (Doc. 1, Compl.) DiPietro, while housed at SCI-Houtzdale, filed an Amended Complaint on April 18, 2016. (Doc. 16, Am. Compl.) DiPietro again claimed that staff at

Central Office and SCI-Rockview failed to protect him from Mienert's retaliatory acts of transferring him to different prisons and who threatened to label him as "a rat & get him killed". (*Id.* at ¶¶ 31 - 33). None of the existing Defendants are employed at SCI-Houtzdale. The events upon which DiPietro premises his amendment all took place at SCI-Houtzdale in June of this year. While DiPietro argues he was assaulted, water-boarded and transferred from SCI-Houtzdale due to Mienert's influence and continued retaliation, these events occurred at a different facility, involve different individuals and include a claim of assault and thus must be pursued in a new action. As such, his motions to amend will be denied.

      B.    *Motion for Preliminary Injunction*

Inmate pro se pleadings which seek extraordinary, or emergency relief, in the form of preliminary injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure. A district court will only grant a preliminary injunction if the moving party produces evidence sufficient to convince the court that: (1) there is a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief. *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102 (3d Cir. 2010); *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987). Furthermore, because of the intractable problems of prison administration, a request for injunctive relief in the prison context must be viewed with considerable caution. *Rush v. Corr. Med. Servs., Inc.*,

287 F. App'x. 142, 144 (3d Cir. 2008) (citing *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995)); *see also* 18 U.S.C. § 3626(a)(2).

Here, DiPietro seeks an injunction against nondefendants preventing them from transferring him to another facility farther from his Philadelphia home or holding him in the RHU beyond his current disciplinary sanction in retaliation for his filing of this civil action. DiPietro speculates that if transferred to a different facility farther from his hometown of Philadelphia, it will be in retaliation for his lawsuit. He does not suggest that *any* transfer would be retaliatory, just one that would move him geographically farther from Philadelphia. Likewise, Plaintiff seeks an order preventing nondefendants from housing him in the RHU longer than his present disciplinary sanction. In both instances, DiPietro speculates that he will be subjected to retaliation by third parties.[1] His fears of retaliation in the form of a transfer or extended RHU placement by nondefendants are not based on any credible or cited evidence. A court may not grant preliminary injunctive relief unless the Plaintiff can show "immediate irreparable injury, which is more than serious or substantial harm." *ECRI*, 809 F.2d at 226. Additionally, the claimed injury cannot merely be possible, speculative or remote. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101 02, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983) (The moving party must show that "he has sustained or is immediately in danger of sustaining some direct injury as a result of the challenged official conduct and the injury or threat of injury must be both real and immediate not

---

[1] As addressed later in this memorandum, DiPietro makes a similar statement claiming that while at SCI-Somerset he is being denied access to the law library in retaliation for his filing of this lawsuit.

conjectural or hypothetical.") (internal quotation marks omitted).  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief[.]" *O'Shea v. Littleton*, 414 U.S. 488, 495 - 96, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974). DiPietro has not met his burden of proving preliminary injunction relief is warranted. Accordingly, his motion will be denied.

      C.    *Motion to Appoint a Mediator*

"Every civil action filed within the Middle District of Pennsylvania is eligible for mediation except any case which the assigned judge determines, after application by any party or by the mediator, is not suitable for mediation."  Pa. M.D. Local Rule 16.8.4.  We will not force parties enter into the alternative dispute resolution process.  While DiPietro expresses an interest in mediation, Defendants have not.  It is unknown if DiPietro has approached defense counsel concerning settlement prior to mediation.  In the absence of any such discussions, or expressed interest from both parties, we will not appoint a mediator to this case.  DiPietro's motion will be denied, but if circumstances change, he may renew his request for a mediator.

      D.    *Defendants' Motion to Withdraw their Motion to Dismiss the Complaint, or in the alternative, Motion for Summary Judgment*

Based on Defendants' request, their motion to dismiss the Complaint, or alternatively, motion for summary judgment (Doc. 34) will be deemed withdrawn. Defendants will be required to file an Answer to the Complaint.

E.  *DiPietro's Motion for Extension of Time*

Although captioned as a motion for extension of time, it appears that DiPietro seeks a stay of these proceedings for seven months, the time he believes it will take to obtain new reading glasses. (Doc. 47). Defendants have submitted evidence, uncontradicted by DiPietro, showing that on June 15, 2016, when medical staff learned of DiPietro's broken glasses, they were prepared to order a new pair for him as his prescription was current. DiPietro elected not to order new glasses until he was seen by the optometrist. (Doc. 55, ECF p. 22). He was scheduled to be seen sometime in July. SCI-Somerset staff affirm that it takes approximately six to eight weeks from the time new eye glasses are ordered to have them delivered to the institution. (*Id.*) Based on this evidence, and the Defendants' withdrawal of their motion to dismiss or in the alterative motion for summary judgment, DiPietro's motion for a seven-month stay of these proceedings while he obtains new reading glasses is denied.

F.  *DiPietro's Second and Third Motions for Appointment of Counsel*

DiPietro seeks court-appointed counsel on the basis of his lack of legal training, lack of access to the law library and his inability to read or write due to his lack of prescription eyeware. He claims that a neighboring inmate must read all documents to him on account of his poor uncorrected vision.

This is a civil action, not a criminal one. Hence the plaintiff has no constitutional or statutory right to appointed counsel. *Montgomery v. Pinchak*, 294 F.3d

492, 498 (3d Cir. 2002). Nor can the court compel a lawyer to represent an indigent plaintiff. *Tabron v. Grace*, 6 F.3d 147, 153 n.1 (3d Cir. 1993). Rather, representation for an indigent is governed by 28 U.S.C. § 1915(e)(1) which only provides that the court "may *request* an attorney to represent any person unable to afford counsel." (emphasis added).

A district court has broad discretion under 28 U.S.C. § 1915(e)(1) in deciding whether to seek counsel, *Montgomery,* 294 F.3d at 498, and the decision can be made at any point of the litigation. *Id.* at 503-04 ("Either the Magistrate Judge or the District Court should have recognized Montgomery's difficulties as they became increasingly apparent and, in light of them, reconsidered Montgomery's motion for appointment of counsel.").

The Third Circuit has provided guidance for the exercise of the district court's discretion. At the threshold, the court must decide whether the plaintiff's case "has some arguable merit in fact and law." *Id.* at 499 (quoting *Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997)). A court need not appoint counsel "if the indigent's chances of success on the merits are extremely slim." *Id.* at 500 (quoting *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986))(internal quotation marks and brackets omitted). If the threshold requirement is met, the court then considers a number of factors established by the Third Circuit to determine whether it is appropriate to request counsel for an indigent party. These factors include: (1) the plaintiff's ability to present his own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (4) the plaintiff's capacity to retain counsel on his own behalf; (5) the extent to which a case is likely to turn on credibility

determinations; and (6) whether the case will require testimony from expert witnesses. *Tabron*, 6 F.3d at 155-57.

"[V]olunteer lawyer time is a precious commodity, *Montgomery, supra,* 294 F.3d at 499, so the district court's "broad statutory discretion" should be exercised "discerningly." *Id.* at 505 n.10.  However, if the case "appears to have merit" and "most of the . . . *Tabron* factors have been met, the Third Circuit "instruct[s]" that the district court "should make every attempt to obtain counsel." *Id.* at 505 (quoting *Parham*, 126 F.3d at 461)(internal quotation marks omitted).

After careful review of the allegations in DiPietro's motions for counsel and Defendants' response which was supported by several sworn declarations, DiPietro's motions are denied.  As we have already discussed, the extended delay in replacing DiPietro's glasses is in part, self-imposed to a degree.  Nonetheless, he should be receiving his new glasses fairly soon if not already.  More importantly, given that Defendants' have withdrawn their potentially dispositive motion, one of DiPietro's reasons for seeking court-appointed counsel is resolved.  He need not conduct legal research without his glasses.

Next, we address DiPietro's claim that he is being denied access to the law library.  The evidence submitted by Defendants shows that since his arrival at SCI-Somerset, DiPietro has failed to go through the proper institutional channels to seek access to the law library. Moreover, as of June 12, 2016, DiPietro admitted in a letter to defense counsel that "[he] is not being denied law library" at SCI-Somerset.  (Doc. 51, ECF p. 14).

We find it curious that DiPietro's second motion for counsel (Doc. 31), in which he claims he "has no access to law library because he is on restricted movement. This was done in retaliation for filing this lawsuit," was also penned the same day, June 12, 2016. Nonetheless, without reading glasses, and with access to the law library should he choose to properly request access to it, DiPietro has demonstrated his ability to adequately, and frequently, communicate his needs and concerns with defense counsel and the court. Finally, any concern over his inexperience as a litigant is unnecessary as his pleadings are measured against the liberal construction of *pro se* pleadings.  *See Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).  Accordingly, DiPietro's motions for appointment of counsel will be denied.

We will issue an appropriate order.

/s/ William W. Caldwell
William W. Caldwell
United States District Judge

Date: August 16, 2016