IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NICODEMO DiPIETRO, :
 :
    Plaintiff :
 :
  vs. : CIVIL NO. 1:CV-15-1137
 :
THE DEPARTMENT OF : (Judge Caldwell)
CORRECTIONS & ITS EMPLOYEES :
LISTED HEREIN, *et al.*, :
 :
    Defendants :

*M E M O R A N D U M*

I. *Introduction*

    The pro se plaintiff, Nicodemo DiPietro, an inmate at the state correctional institution in Somerset, Pennsylvania, filed an amended complaint in this 42 U.S.C. § 1983 action. Plaintiff has named the Pennsylvania Department of Corrections (DOC) as a defendant along with thirteen DOC employees. We have before us Defendants' motion for judgment on the pleadings.

    Essentially, Plaintiff alleges that defendant, Daniel Meinert, an O.S.I. investigator, falsely labeled Plaintiff an informant or "rat" because Plaintiff refused Meinert's attempts to make him a real informant. Meinert then had Plaintiff transferred to a prison where Plaintiff had many enemies with the intent of having Plaintiff assaulted or killed for being an informant. The remaining defendants have been sued because

Plaintiff alleges he contacted them, or filed grievances that they handled, about Meinert's actions, but they did not do anything to prevent Meinert from carrying out his plan.

In moving for judgment on the pleadings, Defendants contend that they are all entitled to dismissal of any First Amendment retaliation claim in the amended complaint and the Fourteenth Amendment claim. Defendants also argue that certain of them are entitled to dismissal because they lack personal involvement in the actions taken against him.

II. *Standard of Review*

We are considering Defendants' motion for judgment on the pleadings under Fed. R. Civ. P. 12(c).[1] Since the motion argues that the amended complaint fails to state a claim, we review it under the standard used for motions to dismiss under Fed. R. Civ. P. 12(b)(6). *See Turbe v. Gov't of Virgin Islands,* 938 F.2d 427, 428 (3d Cir. 1991); *Bangura v. City of Philadelphia,* 338 F. App'x 261, 264 (3d Cir. 2009)(nonprecedential).

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009)(quoting

---

[1] Defendants have filed an answer. (Doc. 62).

-2-

*Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(quoting *Twombly,* 550 U.S. at 556). "[L]abels and conclusions" are not enough, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly,* 550 U.S. at 555 (quoted case omitted).

III. *Background*

The following is the background to this litigation, as Plaintiff alleges it. On or about February 13, 2014, O.S.I. investigator, defendant Daniel Meinert, visited Plaintiff, attempting to make him an informant. (Doc. 16, Am. Compl. ¶ 17).[2] "Plaintiff refused and Meinert threatened" Plaintiff "with bodily injury . . . "saying he was going to inform prisoners and the Philly Mob that Plaintiff was an informant/rat." (*Id.* ¶ 18). On February 14, 2014, "Meinert facilitated Plaintiff's transfer to SCI-Rockview," knowing "Plaintiff had

---

[2] We have corrected the spelling of Meinert's and Rackovan's names in the amended complaint. Plaintiff spelled the latter name as "Rackavan."

-3-

enemies there in an attempt to have Plaintiff assaulted and/or killed as an informant." (*Id.* ¶ 19).

When Plaintiff got to SCI-Rockview, he "filed grievances and informed prison officials: Deputy Tice; Cpt. Churner; & Lt. Vance of Meinert's threats & promise to get Plaintiff injured/killed & permanently labeling Plaintiff an informant placing Plaintiff's life in constant danger." (*Id.* ¶ 20). "Deputy Tice; Cpt. Churner; & Lt. Vance deliberately refused to take actions to protect Plaintiff by prohibiting Meinert's retaliation." (*Id.* ¶ 21). Instead, "Dept. Tice; Capt. Churner & Lt. Vance deliberately communicated with Meinert and collaborated with Meinert by placing Plaintiff @ SCI-Rockview with Plaintiff's well known enemies inclusive of labeling him an informant." (*Id.* ¶ 22).

On or about April 23, 2014, "Plaintiff notified employee Rackovan via grievance #507034 stating Meinert and prison officials deliberately sent Plaintiff to SCI Rockview per Meinert's instruction so Plaintiff's enemies would attack Him." (*Id.* ¶ 23). "Rackovan deliberately refused to take actions to abate Plaintiff's dangerous situation." (*Id.* ¶ 24).

On or about May 5, 2014, "Plaintiff gave notification to" Glunt, Rcokview's superintendent, "that Plaintiff's life was in danger." (*Id.* ¶ 25). "Supt. Glunt communicated with Meinert & refused to assist Plaintiff per Meinert's request." (*Id.* ¶ 26).

On or about May 6, 2014, "inmate Khalil Brown heard Sgt. Crawford say he's been instructed to search (toss up/harass) Plaintiff's cell in retaliation for Plaintiff

-4-

filing a grievance about Meinert's threat, rat label & for contacting Supt. Glunt; Dept. Tice' Capt. Churner & Lt. Vance."  (*Id.* ¶ 27).

On or about May 8, 2014, "Plaintiff contacted employee Perry & notified him of the bodily danger Meinert & Rockview prison officials [had] placed him in."  (*Id.* ¶ 28).  "As well as the retaliation cell search Plaintiff's witness told him about."  (*Id.* ¶ 29).  "[E]mployee Perry was contacted by Meinert; Supt. Glunt & Dept. Tice" and was "told then not to get involved" as Plaintiff would be gone soon, meaning dead, by way "of elements inside the prison."  (*Id.* ¶ 30).

On or about May 17, 2014, "Plaintiff contacted employee Perry again about prison officials constant cell searching/harassment, prison officials deliberate transfers to prison with enemies who want to kill Plaintiff in hopes it happens, and all the due process violations."  (*Id.* ¶ 31).  "Employee Perry refused to protect Plaintiff's health/safety and upon belief and information, Perry was instructed to do this between" February 14, 2014, and February 15, 2015.  (*Id.* ¶ 32).

On or about May 24, 2014, "Plaintiff contacted employee Varner & notified her of Meinert's threats & current actions to retaliate, harass, label Plaintiff a rat & get him killed."  (*Id.* ¶ 33).  "[E]mployee Varner communicated with SCI Rockview prison officials named in complaint & colluded with their actions & refused to take measures to protect Plaintiff's life."  (*Id.* ¶ 34).

On or about June 6, 2014 to June 12, 2014, "Plaintiff notified Rackovan; Perry and other prison officials again to document their actions to assist Meinert in getting Plaintiff's life & name put on the Philly Mob hit list. . . . . (*Id.* ¶ 35).

On or about June 11, 2014, "an inmate . . . transferred to SCI Rockview & gave Plaintiff a witness account of Meinert's & C.D. Wood's actions of searching other inmates cells [at] Fayette to anger the inmates & telling the inmates who[se] cells were searched that their informant, Plaintiff was the reason the inmates are getting searched." (*Id.* ¶ 36). "This searching cell action and publicly saying it was Plaintiff, has put a 'Rat' label on Plaintiff's head & marked him for death." (*Id.* ¶ 37).

On or about June 12, 2014, "Plaintiff filed a grievance about Meinert's instructions and actions to cell searches of other inmates to endanger Plaintiff's life." (*Id.* ¶ 38). "Meinart in retaliation for Plaintiff's grievance circa June 13, 2014, communicated certain instructions to prison officials to relocate Plaintiff to SCI Greene where multiple inmates who[ ] wanted to kill Plaintiff were housed." (*Id.* ¶ 39).

"[C]irca July of 2014 to Nov. 2014 Meinert communicated instructions via electronic means to stop Plaintiff's commissary inclusive of cutting off cable he has been purchasing for well over 10 years . . . . ." (*Id.* ¶ 40).

"Circa" August 13, 2014, "Plaintiff notified employee Smeal, a new employee of the danger Meinert & prison officials have put Him in & of the harassment, retaliation & rat labeling in hopes for help." (*Id.* ¶ 41).[3] "Circa August 2014 to Sept 2014 .

---

[3] Smeal also goes by the name Moore Smeal.

. . Smeal contacted Meinert and Rockview prison officials & was told to stand down and don't get involved." (*Id.* ¶ 42).

"[Due] to Plaintiff's contact with Smeal, circa" November 25, 2012,[4] "Plaintiff's account was deliberately frozen in order to inconvenience him to prevent Plaintiff from paying funds to his attorney inclusive of utilizing commissary for hygienic products, copying expenses to mail legal mail, to burden Plaintiff's life and liberty." (*Id.* ¶ 43).

"Circa" December 2, 2014, "Meinert visited Plaintiff & asked Plaintiff if he's had enough?  Meinert said if Plaintiff doesn't become his informant/snitch, his life will be hell and death will await him at every yard out.  Meinert said this is only a taste of his power, when he's done, the Philly Mob is going to kill him and his family." (*Id.* ¶ 44). "Plaintiff refused to talk to Meinert & was escorted back to his cell & immediately filed a grievance of the encounter & notified Mr. Wetzel." (*Id.* ¶ 45).

"Meniert sent falsified & incriminating documents to the Plaintiff's friends & family." (*Id.* ¶ 46).  "Circa" January 27, 2015, "Plaintiff received mail from family & friends . . . identifying Plaintiff as a rat/informant working for Meinert" and . . . Plaintiff has information identifying Meinert as the source." (*Id.* ¶ 47).

"Circa" March 23, 2015, "Plaintiff contacted employee Burns of the situation Meinert created now that has marked Plaintiff for death." (*Id.* ¶ 48).  "Circa" March 25,

---

[4] The date should be 2014.

2015, "Plaintiff contacted employee Barnacle his life was [in danger] & Meinert & prison officials labeled him a rat to have him killed." (*Id.* ¶ 49).

"[C]irca" March 27, 2015, "inmate Khalil Brown was deliberately given/sent mail about Plaintiff and Plaintiff's cousin (Gino DiPietro) who was murdered for being an informant intending to elicit other violent inmates to react & cause bodily injury & death to Plaintiff." (*Id.* ¶ 50).

"Circa" April 8, 2015, "Plaintiff notified Amanda West in hopes this prison official would help but to no avail." (*Id.* ¶ 51).

In Count "A" of the amended complaint, Plaintiff names defendants Meinert, Glunt, Tice, Vance and Mundy and alleges they knew of the retaliation taken against Plaintiff "but deliberately disregarded ths knowledge & refused to take any action" to stop it. Plaintiff avers this conduct violated his First, Eighth and Fourteenth Amendment rights. (*Id.* ¶ 53).

In Count "B," Plaintiff names Meinert and alleges that Meinert's "intentional disclosure of Plaintiff's potential status as a rat/informant, & mailing falsified documents identifying Plaintiff as an informant to inmates, families and friends constitutes deliberate indifference to Plaintiff's personal safety. Plaintiff alleges Meinert's conduct violated his First, Eighth and Fourteenth Amendment rights. (*Id.* ¶ 55).

In Count "C," Plaintiff names Wetzel, Barnacle, Perry, Rackovan, Lewis, Smeal, Varner and West and alleges that these defendants "knew of the immediate serious danger posed to Plaintiff but deliberately disregarded this knowledge & refused to

-8-

take any action that would have protected Plaintiff from retaliation, harassment, harm & rat labeling . . . ." (*Id.* ¶ 57). Plaintiff alleges their conduct violated his First, Eighth and Fourteenth Amendment rights. Plaintiff seeks compensatory and punitive damages along with declaratory relief.

IV. *Discussion*

### A. *First Amendment Retaliation Claim*

To prevail on a First Amendment retaliation claim, a plaintiff must show that "(1) he engaged in constitutionally protected conduct, (2) he was subjected to adverse actions by a state actor, and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action." *Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011). An adverse action is conduct that is "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Id.* (internal quotation marks and quoted case omitted).

Defendants seek dismissal of a First Amendment retaliation claim as against all defendants related to the filing of grievances. They assert the retaliation claim fails to allege an adverse action or facts sufficient to show that the grievance was a substantial motivating factor for the state actor to take the adverse action.

As to the adverse action element, Defendants assert it is defective in four ways. First, there are no allegations that Plaintiff suffered any physical harm from Meinert's alleged threats and conduct. Second, while Plaintiff alleges he was transferred

-9-

to other institutions, such transfers cannot be adverse actions as a prisoner has no justifiable expectation of being in any particular prison. *See Olim v. Wakinekona*, 461 U.S. 238, 245, 103 S.Ct. 1741, 1745, 75 L.Ed.2d 813 (1983). Third, cell searches also cannot be adverse actions as an inmate has no reasonable expectation of privacy in his cell. *See Hudson v. Palmer*, 468 U.S. 517, 527-28, 104 S.Ct. 3194, 3201, 82 L.Ed.2d 393 (1984). Fourth, there is no adverse action because there are no allegations showing that a person of ordinary firmness would be deterred from exercising his constitutional rights as Plaintiff alleges he continued to file grievances and contact prison officials.

Finally, Defendants argue that Plaintiff has failed to allege that Plaintiff's grievance was a substantial motivating factor for Meinert.

As we read the amended complaint, Plaintiff sets forth two First Amendment retaliation claims. In the first one, Plaintiff alleges that Sgt. Crawford was told to search Plaintiff's cell in retaliation for Plaintiff's filing a grievance about Meinert's treatment of him. (Am. Compl. ¶ 27). These cell searches actually took place. (*Id.* ¶¶ 29 and 31). In the second, after Plaintiff filed a grievance in June 2014 about Meinert's conduct, Meinert told prison officials to transfer Plaintiff to SCI Greene and to stop his commissary. (*Id.* ¶¶ 38-40).

We disagree with Defendants that Plaintiff has not shown adverse action. It is true that he has not alleged physical harm, but adverse action can be shown in other ways, such as by prison transfers and cell searches, just as Plaintiff has alleged here. As Defendants note, prisoners have no constitutional right against cell searches or a right to

-10-

being incarcerated in any particular prison. However, "[g]overnment actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir. 2003)(quoting *Allah v. Seiverling,* 229 F.3d 220, 224–25 (3d Cir. 2000)).

Nor can Defendants rely on Plaintiff's continuing to file grievances and contact prison officials to establish there was no adverse action. The test is not whether Plaintiff himself would have been deterred but whether a person of ordinary firmness would have been. *See Mirabella v. Villard*, 853 F.3d 641, 650 (3d Cir. 2017)(citing *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012)). We think a person of ordinary firmness would have been deterred by the alleged actions of Meinert.

Finally, we reject Defendants' argument that Plaintiff failed to allege that Plaintiff's grievance was a substantial motivating factor for Meinert. We think this aspect of the claims is satisfied by other allegations against Meinert, that he allegedly placed Plaintiff in danger because Plaintiff refused to become an informant.

### B. *The Fourteenth Amendment Claim*

Defendants assert the Fourteenth Amendment claim is based on the same allegations as the Eighth Amendment claim, that Plaintiff was labeled an informant and Defendants failed to assist him. Defendants argue that Plaintiff can thus make no due process claim when the claim is covered by a specific constitutional provision, here the Eighth Amendment. We agree that the claims are based on the same set of averments.

-11-

Plaintiff therefore cannot pursue a due process claim when the proper claim is under the Eighth Amendment. *See Berg v. Cnty. of Allegheny*, 219 F.3d 261, 268–69 (3d Cir. 2000)(analyzing claim of improper arrest under the Fourth Amendment rather than under the Due Process Clause of the Fourteenth Amendment because the Fourth Amendment was the specific constitutional amendment governing the claim); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010)("if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process")(quoted case and internal quotation marks omitted).

The Fourteenth Amendment due process claim will therefore be dismissed.

C. *Personal Involvement of Certain Individual Defendants*

Defendants assert the following individual defendants lack the personal involvement in the alleged wrongs to impose liability under section 1983: Barnacle, Glunt, Moore Smeal, Mundy, Rackovan, Tice, Vance, Varner, West, and Wetzel. Defendants identify them as the "Moving Defendants."

Personal involvement in the alleged wrongs is necessary for the imposition of liability in a civil rights action. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005); *Sutton v. Rasheed*, 323 F.3d 236, 249-50 (3d Cir. 2003); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Liability cannot be imposed on the basis of respondeat superior. *Evancho*, 423 F.3d at 353.

Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. *Rode*, 845 F.2d at 1207-08; *see Atkinson v. Taylor*, 316 F.3d 257, 270 (3d Cir. 2003). A supervisor may also be liable if he knew of, and tolerated, ongoing misbehavior. *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 & n.3 (3d Cir. 1995). "But where actual supervisory authority is lacking, mere inaction, in most circumstances, does not reasonably give rise to a similar inference [of acquiescence]. As a general matter, a person who fails to act to correct the conduct of someone over whom he or she has no supervisory authority cannot fairly be said to have "acquiesced" in the latter's conduct." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). "[A]nd a higher-ranked individual does not necessarily have supervisory authority over a lower-ranked employee." *Jennings-Fowler v. City of Scranton*, 680 F. App'x 112, 118 n.23 (3d Cir. 2017)(nonprecedential)(citing *Robinson*, 120 F.3d at 1294).

Handling a grievance or a prisoner's request does not establish personal involvement. *Little v. Mottern*, No. 14-CV-953, 2017 WL 934464, at *11 (M.D. Pa. Mar. 7, 2017); *Jefferson v. Wolfe*, No. 04-CV-44, 2006 WL 1947721, at *17 (W.D. Pa. Jul. 11, 2006)(the defendants' personal involvement not shown when the only allegations against them is that one denied an appeal of the inmate's grievance and the other denied an appeal of his grievance to final review).

-13-

Defendants argue as to individual defendants as follows. We sometimes borrow their language without attribution.

**Mundy**: Mundy is alleged to be a correctional officer and employee of Rockview. (Doc. 16, Am. Compl. ¶ 9). The only other reference to Mundy states that he "knew of the retaliation and retaliatory actions posed to Plaintiff but deliberately disregarded this knowledge and refused to take any action that would [have] stopped it, thereby violating [h]is 1st, 8th & 14th Amendment Rights." (*Id.* ¶ 53). Defendants argue this is a legal conclusion couched as a factual assertion and should therefore be disregarded as an inadequate pleading. We agree and will dismiss Mundy from this action.

**Wetzel**: Wetzel is the DOC Secretary. (*Id.* ¶ 5). DiPietro filed a grievance and notified Wetzel that Meinert had visited him and threatened him. (*Id.* ¶ 45). The threat involved Meinert's telling Plaintiff that if Plaintiff did not "become his informant/snitch, his life would be hell and death would await him at every yard out." Meinert further said when he was done, "the Philly Mob [was] going to kill him and his family." (*Id.* ¶ 44).

**Barnacle**: Barnacle is an employee of the Department. (*Id.* ¶ 6). DiPietro contacted Barnacle to tell him that his life was in danger and he was labeled a rat to have him killed. (*Id.* ¶ 49).

**West**: West was an employee of the Department. (*Id.* ¶ 16). DiPietro notified her in hopes that she would help but she did not. (*Id.* ¶ 51).

-14-

**Varner**: Varner was an employee of the Department. (*Id.* ¶ 15). On or about May 24, 2014, "Plaintiff contacted employee Varner & notified her of Meinert's threats & current actions to retaliate, harass, label Plaintiff a rat & get him killed." (*Id.* ¶ 33). DiPietro believes Varner communicated with SCI Rockview officials, colluded with them, and refused to take measures to protect DiPietro. (*Id.* ¶ 34).

**Rackovan**: Rackovan was an employee of the Department. (*Id.* ¶ 9). On or about April 23, 2014, "Plaintiff notified employee Rackovan via grievance #507034 stating Meinert and prison officials deliberately sent Plaintiff to SCI Rockview per Meinert's instruction so Plaintiff's enemies would attack Him." (*Id.* ¶ 23). "Rackovan deliberately refused to take actions to abate Plaintiff's dangerous situation." (*Id.* ¶ 24). On or about June 6, 2014 to June 12, 2014, "Plaintiff notified Rackovan . . . and other prison officials again to document their actions to assist Meinert in getting Plaintiff's life & name put on the Philly Mob hit list. . . . (*Id.* ¶ 35).

**Moore Smeal**: Moore Smeal was an employee of the Department. (*Id.* ¶ 14). "'Circa' August 13, 2014, Plaintiff notified employee Smeal, a new employee of the danger Meinert & prison officials have put Him in & of the harassment, retaliation & rat labeling in hopes for help." (*Id.* ¶ 41). "Circa August 2014 to Sept 2014 . . . Smeal contacted Meinert and Rockview prison officials & was told to stand down and don't get involved." (*Id.* ¶ 42). Due to DiPietro's contact with Smeal, "Plaintiff's account was deliberately frozen in order to inconvenience him to prevent Plaintiff from paying funds to

his attorney inclusive of utilizing commissary for hygienic products, copying expenses to mail legal mail, to burden Plaintiff's life and liberty." (*Id.* ¶ 43).

**Tice and Vance**: Deputy Tice and Vance were employees of the Department. (*Id.* ¶¶ 10 and 11). When Plaintiff got to SCI-Rockview, he "filed grievances and informed prison officials" Deputy Tice . . . & Lt. Vance of Meinert's threats & promise to get Plaintiff injured/killed & permanently labeling Plaintiff an informant placing Plaintiff's life in constant danger." (*Id.* ¶ 20). "Deputy Tice . . . & Lt. Vance deliberately refused to take actions to protect Plaintiff by prohibiting Meinert's retaliation." (*Id.* ¶ 21). Instead, "Dept. Tice . . . & Lt. Vance deliberately communicated with Meinert and collaborated with Meinert by placing Plaintiff [at] SCI-Rockview with Plaintiff's well known enemies inclusive of labeling him an informant." (*Id.* ¶ 22).

**Glunt**: Glunt was the Superintendent of SCI Rockview. (*Id.* ¶ 8). On or about May 5, 2014, Plaintiff notified Glunt "that Plaintiff's life was in danger." (*Id.* ¶ 25). Glunt "communicated with Meinert" and "refused to assist Plaintiff per Meinert's request." (*Id.* ¶ 26). On or about May 6, 2014, "inmate Khalil Brown heard Sgt. Crawford say he's been instructed to search (toss up/harass) Plaintiff's cell in retaliation for Plaintiff filing a grievance about Meinert's threat, rat label & for contacting Supt. Glunt; Dept. Tice' Capt. Churner & Lt. Vance." (*Id.* ¶ 27).

We agree with Defendants that the claims against the following defendants should be dismissed because, even if Plaintiff requested their assistance, they were not Meinert's supervisors and hence their failure to assist Plaintiff is not acquiescence in

-16-

Meinert's alleged conduct: Barnacle, Glunt, Moore Smeal, Mundy, Rackovan, Tice, Vance, Varner, West. Wetzel will be dismissed because merely taking no action on Meinert's past threat is not acquiescence in Meinert's conduct. We also note that Plaintiff mentions filing grievances in connection with notice to Wetzel, Rackovan, Tice and Vance, but filing a grievance is not enough to establish personal involvement.

      We will issue an appropriate order.

<u>/s/William W. Caldwell</u>  
William W. Caldwell  
United States District Judge

October 16, 2017