# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICODEMO DIPIETRO, | |
| Plaintiff, | NO. 1:15-CV-01137 |
| v. | (JUDGE CAPUTO) |
| DANIEL MEINERT, *et al.*, | |
| Defendants. | |

## MEMORANDUM

Presently before me is a Motion for Summary Judgment (Doc. 125) filed by the remaining Defendants in this case, Daniel Meinert and Randall Perry.[1] Plaintiff Nicodemo DiPietro, proceeding *pro se*, claims Meinert violated his civil rights by falsely labeling him a "rat," and by retaliating against him both for filing grievances and for refusing to cooperate with Meinert's prison investigation. DiPietro claims Perry, on the other hand, ignored a substantial risk of harm when Perry transferred him to a prison where his prior stabbing victim was housed. But because DiPietro fails to produce evidence to support his claims, Defendants' Motion will be granted, and judgment will be entered in their favor.

## I. Background

---

[1] Neither DiPietro nor Meinert and Perry address the two other defendants that are still parties to this suit: the Pennsylvania Department of Corrections (the "DOC") and Robin Lewis. In the prisoner litigation context, courts have the authority to dismiss parties *sua sponte* pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(c). *See Beenick v. LeFebvre*, 684 F. App'x 200, 204-05 (3d Cir. 2017). I will exercise that authority to dismiss the DOC and Lewis. DiPietro's Amended Complaint (Doc. 16) merely mentions the DOC in the caption, which is insufficient to state a claim against it. *Carrasquillo v. Rendell*, No. CIV.A. 09-347, 2009 WL 1940394, at *3 (W.D. Pa. June 30, 2009) (collecting cases). Nor has DiPietro produced evidence suggesting the DOC's liability. The DOC will accordingly be dismissed. And Lewis (who appears once in the body of the Amended Complaint) is factually and legally indistinguishable from the defendants dismissed pursuant to Judge Caldwell's October 16, 2017 Order (Doc. 121). For the reasons stated in the Memorandum preceding that Order (Doc. 120), and because no evidence of wrongdoing has been produced, Lewis will also be dismissed.

The undisputed facts, viewed in the light most favorable to DiPietro, are as follows:

DiPietro was found guilty of "first degree murder, attempted robbery of a motor vehicle, simple assault, and a violation of the Uniform Firearms Act on August 7, 2001," in connection with a shooting in a Philadelphia nightclub. *Commonwealth v. DiPietro*, No. 353 EDA 2011, 2013 WL 11259319, at *1 (Pa. Super. Ct. July 24, 2013). He was "sentenced to life imprisonment for the first degree murder conviction." *Id.*

On February 13, 2014, DiPietro was housed at SCI Fayette. (Doc. 126 at ¶ 1 (Defendants' Statement of Material Facts)).[2] The next day, Daniel Meinert, a special investigator with the Pennsylvania Department of Corrections, had DiPietro transferred to SCI Rockview after DiPietro promised he would provide information on a "dirty" guard. (*See id.* ¶¶ 1-2; Doc. 126-2 at 24:14-18; 27:6-19 (hereinafter "DiPietro Dep.")). DiPietro revealed to Meinert, however, that he had lied—rather than "snitch" on the guard, he provided Meinert false information. (DiPietro Dep. at 18:8-11, 20:20-21, 25:13-22). In retaliation, Meinert decided to falsely label him a "rat," which put DiPietro's life in danger. (Doc. 126 at ¶ 3). Meinert threatened to tell DiPietro's former mob associates, too. (*Id.*). Meinert ultimately "leaked [a] police report to the media and the media wrote in the newspaper that [DiPietro] attempted to 'rat' on the mob." (*Id.* ¶ 4). "The newspaper article said that Meinert stated [DiPietro] attempted to cooperate with the government and provide false information against mob figures[,] although no specific names were mentioned in the article." (*Id.* ¶ 5).

Additionally, Meinert decided to have DiPietro transferred to SCI Greene, far away from his family and where an inmate he previously stabbed, Mikall, was being housed.

---

[2] As Defendants note, DiPietro has not properly contested their Statement of Material Facts. (*See* Doc. 137 at 2-3). DiPietro's submissions, which state that certain material facts are in dispute, fail to cite to the record or otherwise provide an evidentiary basis for their contents. (*See* Docs. 135, 139-41). Even though DiPietro is proceeding *pro se* and is therefore entitled to some latitude, he is not exempt from Local Rule 56.1 and the failure to comply with it. *Jones v. Sec'y Pa. Dep't of Corr.*, 589 F. App'x 591, 593 (3d Cir. 2014). Defendants' facts—which I note are cast in a light favorable to DiPietro—are accordingly deemed admitted for present purposes.

(DiPietro Dep. at 16:22-25, 20:5-15). DiPietro immediately began filing grievances and writing to prison officials, notifying anyone he could that his stabbing victim was at SCI Greene and that he either did have or should have a "separation order" preventing his transfer there. (*See* Doc. 126 at ¶ 11). Specifically, DiPietro wrote to Randall Perry, who was in charge of transfers, on three occasions. (Doc. 126-3 at ¶ 9 (hereinafter "Perry Decl.")). Perry investigated DiPietro's concerns, determined there was not a sufficient "safety or security concern" to prevent the transfer, and found after reviewing DOC records that there was no separation order with Mikall. (*Id.* ¶¶ 10-12). DiPietro was accordingly transferred to SCI Greene, where he was placed "in the Restricted Housing Unit . . . in Administrative Custody" for the entirety of his stay there. (*Id.* ¶ 13). Because he was in administrative custody, DiPietro "was not permitted to interact with other inmates, and he was not permitted into prison areas where he could interact with general population inmates." (*Id.*).

Finally, Meinert further retaliated against DiPietro by "causing his cable to be turned off," freezing his inmate account, and transferring him to different prisons throughout Pennsylvania. (Doc. 126 at ¶¶ 6, 17-19).

DiPietro, though, got himself transferred to SCI Houtzdale. (DiPietro Dep. at 64:15). While at SCI Houtzdale, a guard called DiPietro a "rat." (*Id.* at 90:14). In response, DiPietro attacked the guard. (*Id.* at 90:14, 118:25, 119:1-25). A group of guards then attacked DiPietro, knocking one of his teeth out and cracking another. (*Id.* at 120:7-11). The guards lifted DiPietro up off the ground, took him to a room, then water boarded him. (*Id.* at 120:22-25; 121:1-10).

DiPietro filed suit on June 10, 2015, alleging violations of his civil rights. (Doc. 1). After some motion practice, DiPietro's claims have been whittled down to violations of the First and Eighth Amendments. (*See* Doc. 120). On November 15, 2017 Defendants filed their Motion for Summary Judgment (Doc. 125), after which they timely filed their statement of facts (Doc. 126) and brief in support (Doc. 131). DiPietro timely responded with his brief in opposition (Doc. 135) and counter-statement of facts (Doc. 139). The Motion has thus

been fully briefed and is now ripe for review.

## II. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A court may grant a motion for summary judgment if, after it considers all probative materials of record, with inferences drawn in favor of the non-moving party, the court is satisfied that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 218 (3d Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986)); *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000)). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law. A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter . . . ." *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (citing *Anderson*, 477 U.S. at 248-49).

The moving party bears the initial burden to identify "specific portions of the record that establish the absence of a genuine issue of material fact." *Santini*, 795 F.3d at 416 (citing *Celotex*, 477 U.S. at 323). If this burden is satisfied by the movant, the burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The non-movant's burden is not satisfied by "simply show[ing] that there is some metaphysical doubt as to the material facts." *Chavarriaga*, 806 F.3d at 218.

## III. Discussion

**A.  Meinert**

DiPietro maintains two claims against Meinert: first, that in violation of the First

4

Amendment, Meinert retaliated against him for filing grievances and refusing to inform on a correctional officer; and second, that in violation of the Eighth Amendment, Meinert falsely labeled DiPietro a rat, thereby putting his life at risk. (*See* Doc. 135 at 1-2; Doc. 140 at 1-2). Defendants argue there is no evidence that Meinert retaliated against DiPietro for his protected activities or that DiPietro was harmed because Meinert labeled him a rat—essentially, that DiPietro cannot establish causation. (*See* Doc. 131 at 15-21).

1. First Amendment Retaliation

For his retaliation claim to survive summary judgment, DiPietro must produce evidence showing that there is a "causal link between the exercise of his constitutional rights and the adverse action taken against him." *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). The Third Circuit has adopted the *Mount Healthy* "burden-shifting framework," which first requires the plaintiff to show "that his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Id.* (quoting *Mount Healthy Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977)). Should the plaintiff make that showing, the burden shifts to the defendant to show, bearing in mind the deference due to prison officials, that "it would have taken the same disciplinary action even in the absence of the protected activity." *Id.* at 333-34.

DiPietro cannot show that his grievances are casually connected to Meinert's actions. DiPietro claims that his grievances first led Meinert to transfer him to SCI Greene. But DiPietro's own deposition testimony contradicts this sequence of events. DiPietro testified that he filed grievances *after* Meinert decided to transfer him to SCI Greene. (*See, e.g.*, DiPietro Dep. at 16:22-25 ("And I filed a grievance from the day that [Meinert] told me that I was going to Greene County to the day that I got [there.]"); *id.* at 20:5-15). It is therefore impossible that DiPietro's grievances were a "substantial or motivating factor" in Meinert's decision, because the grievances post-dated the decision. *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 516 (3d Cir. 2004) (observing that it is not possible to meet the retaliation standard when the adverse action precedes the protected activity); *Ameault v. O'Toole*, 864 F. Supp. 2d 361, 384 (W.D. Pa. 2012) (same). Moreover, as Defendants note, there is no

5

evidence in the record that Meinert was even aware of DiPietro's grievances. (Doc. 131 at 17-18; Doc. 137 at 4-5). At most, there is just DiPietro's speculation, (*see, e.g.*, DiPietro Dep. at 88:23-25), which is insufficient as a matter of law. *McDowell v. Moran Foods, LLC*, 680 F. App'x 72, 75 (3d Cir. 2017). There is thus no evidence of a causal link between DiPietro's grievances and his subsequent prison transfers, freezing of his inmate account, and temporary stopping of his cable (which all ostensibly occurred at Meinert's direction).

Finally, to the extent DiPietro claims the transfers were retaliation for his refusal to inform on a "dirty" guard, (*see* DiPietro Dep. at 15-16), courts have held (albeit cursorily) that such refusal is not a constitutionally-protected activity. *Walker v. Campbell*, No. CIV.A. 09-282, 2011 WL 6153105, at *5 (W.D. Pa. Oct. 31, 2011), *report and recommendation adopted*, 2011 WL 6176808 (W.D. Pa. Dec. 9, 2011); *Bennett v. Goord*, No. 03-CV-6577, 2006 WL 2794421, at *12 (W.D.N.Y. Aug. 1, 2006), *aff'd*, No. 06-3818-PR, 2008 WL 5083122 (2d Cir. Dec. 2, 2008). *But see Burns v. Martuscello*, 890 F.3d 77, 89-93 (2d Cir. 2018) (holding an inmate's refusal to "snitch" on an ongoing basis protected by the First Amendment, but declining to decide whether an inmate has the "right to refuse to give truthful information about a past event"). In fact, DiPietro admits that he lied to Meinert—telling him first that he would cooperate, providing false information, obtaining a favorable prison transfer, then revealing his lie. (DiPietro Dep. at 18:8-11 ("[Meinert] made a deal and then I jerked him off, because I ain't ratting on nobody. Cops or no cops. And I told him that I jerked him off and then that's when he went psychopath."); *id.* at 20:20-21 ("I was lying. Everything that I told him was a lie."); *id.* at 25:13-22 ("I lied. . . . I tried to blame it on the people that weren't dirty. . . . I was playing games with him. Because he had the audacity to ask me to rat.")). Such knowingly false statements to prison officials are unprotected. *See Hadden v. Howard*, 713 F.2d 1003, 1008 (3d Cir. 1983); *Brightwell v. Lehman*, No. CIV.A. 03-205J, 2007 WL 2479682, at *6 (W.D. Pa. Aug. 29, 2007). Whatever retaliation DiPietro suffered as a result, therefore, is not actionable under the First Amendment.

Defendants' Motion for Summary Judgment will accordingly be granted as to

DiPietro's First Amendment retaliation claims.

### 2. Eighth Amendment Claims

DiPietro's remaining claims against Meinert revolve around Meinert labeling him a rat. "The Eighth Amendment imposes on prison officials a duty 'to protect prisoners from violence at the hands of other prisoners[.]'" *Robinson v. Danberg*, 673 F. App'x 205, 214 (3d Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). "[T]hat maxim is especially pertinent where . . . it was prison officials that engendered the conditions for violence in the first place." *Id.* A prison official breaches that duty to protect if the official knew that a prisoner "face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S.at 847. But, in the context of prison officials labeling prisoners "rats" or "snitches," a prisoner must still show an "objectively, sufficiently serious deprivation[]" to support an Eighth Amendment claim. *Robinson*, 673 F. App'x at 214.

Defendants admit, "for purposes of summary judgment only," that Meinert "put Plaintiff's life in danger by trying to label him a 'rat.'" (Doc. 126 at ¶ 3). That admission, it seems, would be sufficient to grant summary judgment in DiPietro's favor in a number of circuits which hold such labeling, standing alone, is an objectively serious deprivation. *See Irving v. Dormire*, 519 F.3d 441, 451 (8th Cir. 2008); *Benefield v. McDowall*, 241 F.3d 1267, 1271-72 (10th Cir. 2001); *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138-39 (9th Cir. 1989); *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984). Other courts take a middle ground, requiring a showing of "actual or imminent harm." *Corley v. City of New York*, No. 1:14-CV-3202-GHW, 2017 WL 4357662, at *13 (S.D.N.Y. Sept. 28, 2017). However, the Third Circuit follows the Fifth, Sixth, and Seventh Circuits in holding that a prisoner must suffer actual injury resulting from being branded a "snitch" or "rat" to have an Eighth Amendment claim. *See Robinson v. Danberg*, 673 F. App'x 205, 214 (3d Cir. 2016) (plaintiff failed to show he suffered "bodily harm" or "liv[ed] in constant fear of retaliation from other inmates" from being labeled a snitch); *Castellano v. Treon*, 79 F. App'x 6, 7 (5th Cir. 2003); *Thompson v. Michigan Dep't of Corr.*, 25 F. App'x 357, 359 (6th Cir. 2002)*; Brown v. Ellis*,

7

175 F.3d 1019 (7th Cir. 1999) (table); *see also Fontroy v. Owens*, 150 F.3d 239, 243-44 (3d Cir. 1998)*; Dillard v. Talamantes*, No. 1:15-CV-974, 2016 WL 7474803, at *8 (M.D. Pa. Dec. 29, 2016). *But see Glover v. Schraufnagel*, 720 F. App'x 312, 313 (7th Cir. 2018) (noting the Seventh Circuit has not consistently followed *Brown v. Ellis*); *Shelton v. Bledsoe*, 775 F.3d 554, 564-65 (3d Cir. 2015) (the Eighth Amendment "protects against the risk—not merely the manifestation—of harm"); *Moore v. Mann*, No. 3:CV-13-2771, 2015 WL 3755045, at *7 (M.D. Pa. June 16, 2015) (applying the Tenth Circuit's holding in *Benefield*); *Williams v. Thomas*, No. CIV.A. 12-01323, 2013 WL 1795578, at *6 (E.D. Pa. Apr. 29, 2013) (same). Accordingly, DiPietro must produce evidence that he suffered an actual injury as a result of Meinert labeling him a rat.

DiPietro argues he has produced that evidence: "[DiPietro] was called a 'rat' by a guard at SCI-Houtzdale and was attacked and 'water boarded' by staff" after he attacked the guard for calling him a rat. (Doc. 126 at ¶ 23). DiPietro believes that the guards attacked him because of "Meinert's lie" which was reported in an Associated Press article. (DiPietro Dep. at 90:7-23; 91:2-9). In other words, because Meinert labeled DiPietro a rat, DiPietro harmed a prison guard who in turn harmed DiPietro because of the label.

There is another evidentiary hurdle DiPietro must clear, though, and it is a familiar one: causation is a necessary element of an Eighth Amendment deliberate indifference claim. *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997). The evidence DiPietro submits and the reasonable inferences that can be drawn from it are insufficient to show causation. The court in *Law v. Tillman*, No. CIV. A. 98-00781BHL, 2001 WL 103304 (S.D. Ala. Jan. 31, 2001) held on summary judgment that causation was not established on facts similar to those here. In that case, a corrections officer called the plaintiff a "snitch," and the plaintiff was subsequently attacked by his cellmate; but the record showed that the plaintiff was, in fact, the aggressor, and the plaintiff only submitted "conclusory statement[s] in the complaint and his affidavits" to show the officer's statement caused the cellmate's attack. *Law*, 2001 WL 103304, at *6. Here, DiPietro was also the initial aggressor in the altercation with the guards who attacked him, and he also fails to produce evidence that the guards

8

attacked him because he was labeled a rat by Meinert. As Defendants note, DiPietro only musters speculation, (*see* DiPietro Dep. at 90:18-20 ("Why would they call me a rat if they didn't read the paper article that was created based off of the lie that Meinert told?"); *id.* at 91:6-9 (claiming that the guards attacked him because of the news article)), which is insufficient to show causation. *See Taylor v. Ridley*, No. 2:18-CV-00314-SU, 2018 WL 3550266, at *3 (D. Or. July 24, 2018) (dismissing deliberate indifference claim because, among other reasons, the plaintiff failed to plead that the inmate who attacked him "knew of the article [that identified him as an informant,] or knew that plaintiff had been identified as a 'snitch' or 'rat'"); *Sutton v. Washington State Dep't of Corr.*, No. 2:13-CV-5064-SMJ, 2015 WL 4748233, at *9 (E.D. Wash. Aug. 11, 2015), *aff'd sub nom. Sutton v. Warner*, 669 F. App'x 376 (9th Cir. 2016) (holding on summary judgment that a reasonable jury could not find that a report naming the plaintiff as an informant caused an inmate attack because the plaintiff did not provide "any evidence showing that [the attacker] was aware of the [r]eport," there was a lack of temporal proximity between the report and the attack, and there were no other instances where the report "actually caused injury"); *Bracey v. Harlow*, No. CIV.A. 11-4 E, 2013 WL 5331978, at *15 (W.D. Pa. Sept. 23, 2013), *aff'd sub nom. Bracey v. Pennsylvania Dep't of Corr.*, 571 F. App'x 75 (3d Cir. 2014) (holding on summary judgment that the plaintiff "failed to produce any competent evidence establishing the required element of causation, i.e., that any inmate, including [the inmate who attacked the plaintiff,] heard [the defendant] call [the p]laintiff a snitch so as to motivate [the attacker] on that basis"); *Smith v. Buss*, 515 F. App'x 599, 601 (7th Cir. 2013) (affirming district court's grant of summary judgment because, among other reasons, the plaintiff's "speculation" that his attacker "was out to get him because of the 'snitch' label" was not supported by any admissible evidence or reasonable inferences therefrom).

DiPietro's Eighth Amendment claim against Meinert fails for another, related reason: DiPietro has not produced evidence showing that Meinert was subjectively aware of the substantial risk that guards would harm him. *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) ("Deliberate indifference is a subjective standard of liability[.]"

(quotation omitted)); *Francis v. Carroll*, 659 F. Supp. 2d 619, 625 (D. Del. 2009) ("Culpability under deliberate indifference requires a subjective awareness of the risk of harm, in addition to a failure to take reasonable steps to avoid that harm." (quotation omitted)). The risk that other *prisoners* will harm a prisoner who has been labeled a snitch or rat may be obvious, *see Reece v. Groose*, 60 F.3d 487, 491 (8th Cir. 1995), but the risk that *guards* would do so is not. The case of *Tabb v. Hannah*, No. 1:10-CV-1122, 2012 WL 3113856 (M.D. Pa. July 30, 2012) is instructive on this point: even where the plaintiff alleged he notified prison officials four separate times that a correctional officer labeled him a snitch, his complaint was dismissed because he failed to allege that prison officials were aware he was at risk of harm from the cellmate who ultimately assaulted him. *Id.* at *6. Here, like in *Tabb*, there is nothing to indicate that Meinert knew (or even should have known) that prison guards—who have a constitutional duty to protect prisoners from bodily harm, *see Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)—would attack DiPietro because he was labeled a rat. Thus, whether viewed through the lens of causation or risk-awareness, DiPietro's evidence is insufficient to support his claim.

Summary judgment will therefore be granted in Defendants' favor on DiPietro's Eighth Amendment claim.

**B.  Perry**

Finally, DiPietro claims that Perry was deliberately indifferent to a serious risk of harm he faced in being transferred to SCI Greene, where Mikall was housed. (*See* Doc. 135 at 1-2; Doc. 140 at 1-2). This claim is governed by the same Eighth Amendment standards that applied to DiPietro's claim against Meinert. DiPietro must produce evidence showing Perry knew he "face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Defendants argue that there is no evidence DiPietro even faced a substantial risk of serious harm, or that Perry disregarded that risk; and in any event, Perry took reasonable measures to ensure DiPietro was safe. (*See* Doc. 135 at 10-13).

The undisputed evidence shows that Perry was not deliberately indifferent to any risk

of harm that DiPietro faced. After DiPietro wrote to Perry about his impending transfer to SCI Greene, Perry followed up on DiPietro's concerns and reviewed DOC records to see if there was actually a separation order preventing him from being transferred. (Perry Decl. at ¶¶ 9-12). There was no separation order. (*Id.* ¶ 12). Given that, Perry could not have been deliberately indifferent to a substantial risk of serious harm—his investigation revealed there was no such risk. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 140-41 (3d Cir. 2001) (holding a supervisor at a juvenile detention facility not deliberately indifferent where the plaintiffs produced no evidence that the supervisor was aware of a substantial risk of serious harm; instead the evidence showed the supervisor investigated allegations of abuse, found them not credible, and performed his job in a negligent manner); *see also Harley v. Warren*, No. CV 13-7656(JMV), 2017 WL 4422412, at *3 (D.N.J. Oct. 4, 2017) ("The fact that [a] 'Keep Separate' order was not followed sounds in negligence rather than deliberate indifference."); *cf. Hamilton v. Leavy*, 117 F.3d 742, 747 (3d Cir. 1997) (reversing grant of summary judgment to a defendant who transferred the plaintiff despite placing him in protective custody two times prior and receiving a recommendation that he be placed in protective custody again). Moreover, DiPietro was housed in the "Restricted Housing Unit . . . in Administrative Custody" during the entirety of his stay at SCI Greene, meaning "he was not permitted to interact with other inmates" at all. (Perry Decl. at ¶ 13). And not only was DiPietro not harmed at SCI Greene, he was also eventually transferred to a different prison. Even where the hindsight of resultant injury casts doubt on the propriety of a prison official's actions, an official who takes minimal, even negligent steps to address an inmate's concerns is not deliberately indifferent. *See, e.g.*, *Beers-Capitol*, 256 F.3d at 140-41; *Wise v. Ranck*, No. 1:07-CV-01899, 2008 WL 4861974, at *1-5 (M.D. Pa. Nov. 6, 2008) (correctional officer who merely informed her superiors of threats of violence between the plaintiff and his cellmate was not deliberately indifferent, despite the harm actually suffered by the plaintiff providing the court with "the benefit of hindsight"). It is unreasonable to infer that Perry knew of a risk of harm that was determined after investigation to be insubstantial, never actually materialized, and was completely abated by DiPietro's placement in

administrative custody and his subsequent transfer.

Defendants' Motion for Summary Judgment will therefore be granted as to all claims against Perry.

### IV. Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment will be granted, and judgment will be entered in their favor.

An appropriate order follows.

<u>January 28, 2019</u>                                                             <u>/s/ A. Richard Caputo</u>
Date                                                                                                 A. Richard Caputo
                                                                                                      United States District Judge